**REILLY v SQUIRE**

Ohio Appeals, 8th Dist, Cuyahoga Co

No 16190. Decided April 18, 1938

Benesch, Hirsch & Fishman, Cleveland, for plaintiff-appellant.

Herbert S. Duffy, Columbus. Ulmer, Berne & Gordon, Cleveland; Klein & Diehm, Cleveland, and Samuel Katz, Cleveland, for defendants-appellees.

GUERNSEY, PJ., CROW, J., KLING-ER, J. (3rd Dist.), sitting by designation.

**OPINION**

By GUERNSEY, PJ.

This is an appeal on questions of law from an order of the Court of Common Pleas of Cuyahoga County, in an action pending therein wherein the appellant. James R. Reilly was plaintiff, and the appellees, Samuel H. Squire, Superintendent of Banks of Ohio, in charge of the liquidation of The Guardian Trust Company of Cleveland, Ohio, The Guardian Trust Company, a corporation, George Q. Keeley, and The Euclid-Y Corporation were defendants, sustaining motions made by the several defendants to arrest the testimony from the jury and for judgment for defendants upon the pleadings and the trial statements of plaintiff, and overruling motion of plaintiff for a new trial.

The action was brought in the Common Pleas Court by James R. Reilly, a depositor in The Guardian Trust Company to the extent of Thirty-Three Dollars ($33.00) as such creditor and depositor of said Trust Company for and on behalf of and for the benefit of each and all other creditors and depositors of said Trust Company who have similar claims against the defendants, and for cancellation of a land trust created by agreement and declaration of trust made by the said The Guardian Trust Company, and of which it was designated as Trustee, and for an accounting, injunction, appointment of receiver and other equitable relief.

The petition and trial statement of the plaintiff are based upon the theory that the subject of the trust, two parcels of real estate now held by George Q. Keeley as successor trustee to The Guardian Trust Company, Trustee, on behalf of the trust certificate holders as beneficiaries of the trust, actually was the property of The Guardian Trust Company and therefore the creation of the trust was ultra vires and illegal.

With reference to the possession of George Q. Keeley of the corpus of the trust, it is alleged in the petition that after the Superintendent of Banks took possession of the said The Guardian Trust Company for the purpose of liquidation, he continued the administration of the purported trust until, on December 31, 1934, upon the petition of David J. Carson in Cause No. 416857 on the dockets of the Common Pleas Court of Cuyahoga County, Ohio, and the answer thereto filed by said superintendent, the defendant, George Q. Keeley was appointed successor-trustee under said "agreement and declaration of trust" and the said latter defendant is now engaged in administering said trust as such successor; and that under the said order of the Court of Common Pleas of Cuyahoga County in such action, title, control and possession of the trust estate were delivered to the defendant, George Q. Keeley, as successor trustee, and since said transfer said defendant has been and now is in control of and exercising dominion over said trust estate and is continuing further to administer the same.

Neither the petition nor plaintiff's trial statement charges fraud or collusion on the part of either of the parties to the Garson case, supra, in the procuring of said order and judgment.

With reference to the Euclid-Y Corporation it is alleged in the petition that at the time of the attempted creation of the trust of the property hereinbefore mentioned, The Guardian Trust Company leased said property to the Euclid-Y Improvement Company, an Ohio corporation, for the term of ninety-nine years beginning December 1, 1926, and renewable for like

terms of ninety-nine years; that said indenture of lease was duly recorded and that subsequently said leasehold estate was transferred and assigned by the Euclid-Y Improvement Company to The Euclid-Y Corporation, and that said assignment was duly recorded. That the defendant, Euclid-Y Corporation is still continuing to collect the rentals from tenants and sub-tenants in actual possession of the premises described.

Both the defendants, Samuel H. Squire, the Superintendent of Banks of Ohio, in charge of the liquidation of The Guardian Trust Company, and George Q. Keeley, in their separate answers to said petition among other defenses plead that the validity of the trust referred to in the plaintiff's petition was determined and adjudicated in the case of **Garson v Guardian Trust Company, et,** No. 416857 in the Court of Common Pleas of Cuyahoga County, Ohio, mentioned in the petition; and that the property comprising the trust was directed to be transferred to George Q. Keeley as successor trustee and that the validity of the trust and all rights of the plaintiff thereunder were adjudicated and determined in said former action.

While the trial court based its rulings and judgment from which this appeal is taken, on a number of different grounds, we will limit our discussion to the cause of one ground, as a consideration of this ground disposes of the entire case.

The ground referred to is that the cause of action, if any, set forth in plaintiff's petition, as limited by his trial statement. is res adjudicata having been fully determined in favor of the appellee, George Q. Keeley, as successor trustee, representing the land trust certificate holders in the case of **Garson v Guardian Trust Company et,** No. 416857 in the Court of Common Pleas of Cuyahoga County, Ohio, above referred to.

With reference to the Garson case above mentioned, it is admitted in the plaintiff's trial statement that Daniel J. Garson, one of the certificate holders of the land trust described in the petition, filed his action against the Guardian Trust Company, and I. J. Fulton, Superintendent of Banks of the State of Ohio. in charge of the liquidation of The Guardian Trust Company, as defendants, for the appointment of a successor trustee to the defendant, The Guardian Trust Company. It is also admitted that it was alleged in the petition in said cause that said trust was in existence and validly created, and that this was admitted by the Superintendent of Banks in his pleadings and in court, and the Superintendent took issue only with respect to the right of the court at the instance of Garson, the plaintiff, to appoint a successor trustee.

It does not appear from the pleadings or the trial statement whether the plaintiff, Garson in said action acted on behalf of himself as a certificate holder, or on behalf of himself and the other certificate holders, but in either event Keeley as successor trustee appointed in said action, acquired under the judgment therein such rights and interests in the trust and corpus thereof as he represents as a party defendant to this action. As none of the certificate holders either individually, or as a class, are made parties defendant to this action, it is only such rights and interests of Keeley as successor trustee thus acquired as are subject to adjudication herein.

"The judgment or decree of a court of competent jurisdiction upon the merits concludes the parties and privies to the litigation and constitutes a bar to a new action or suit involving the same cause of action either before the same or any other tribunal." 34 Corpus Juris 743.

"Where a former judgment on the same cause of action is pleaded in bar

it is no objection to its operation as an estoppel that the former action included some parties who are not joined in the second action, or that additional parties are joined in the second action, provided a judgment was rendered on the merits, and the party against whom the estoppel is set up was actually a party to the former adjudication." 34 Corpus Juris 757.

As any rights and interests Keeley as the successor trustee had in the premises are derived from such action and judgment he, as a privy to the plaintiff in such action, was entitled under the rules mentioned, ▮▮▮▮ to plead such judgment as a bar or estoppel to the claim of the plaintiff in this action in the same manner and to the same extent the plaintiff in the Garson case would have been entitled to plead the same had he been made a party defendant herein, and the judgment in said action having been rendered on the merits the estoppel thereof is operative against the superintendent of banks notwithstanding the fact that additional parties are joined in this action.

In 34 Corpus Juris 923, et seq., referring generally to the subject of res judicata, and particularly to the adjudication of matters essential to the judgment and issues necessarily involved, it is stated:

"Matters which follow by necessary and inevitable inference from the judgment-findings or determinations of the court in relation to the subject matter of the suit which are necessarily implied from its final decision, as being determinations which it must have made in order to justify the judgment as rendered—are equally covered by the estoppel as if they were specifically found in so many words. * * * This is so although the matter necessarily determined was not in issue under the pleadings. * * * In other words, it is allowable to reason back from the judgment to the basis on which it stands, and, regarding the judgment as a conclusion, and finding it to be one which could have been drawn only from certain premises, the premises are equally res judicata with the conclusion itself. As an application of this rule a judgment authorizing a recovery on a written instrument necessarily involves an adjudication of its validity and due execution. And so of a judgment foreclosing a mortgage."

In 34 Corpus Juris, page 944, it is further stated:

"When the existence and validity of a deed or other contract is adjudicated either by being put in issue and tried, or in the sense of being necessarily determined by a judgment enforcing the contract, or refusing to set it aside, the question is conclusively settled by the judgment for the purposes of all further litigation between the same parties; and this rule applies even though that issue was not raised in the action, since in that case the judgment necessarily implies a finding that the cause of action was valid and enforceable."

The court in which the Garson case, supra, was brought had general jurisdiction in equity and it was necessarily determined in the action that the trust was valid as it is only upon such determination the court could have based its order and judgment appointing a successor trustee, and ordering the transfer of the corpus of the trust to such successor trustee.

Under the authorities mentioned the validity of the trust being by necessary and inevitable inference determined by said judgment such validity is conclusively settled by the judgment for the purposes of all further litigation between the same parties and their privies and consequently the superintendent of banks is estopped from further litigating the validity of such trust as against Keeley as successor trustee, privy of the plaintiff in said action.

No depositor or creditor or class of depositors or creditors of the trust company were made parties defendant to said Garson action, which leaves for determination the question:

Did depositors or other creditors of the trust company have any such rights or interests in the liquidation of the trust company as would make them necessary parties- defendant to an action between the superintendent of banks and the holder of a land trust certificate, either acting on behalf of himself or on behalf of himself and other certificate holders similarly situated, under agreement and declaration of trust in land made by the trust company, to determine the validity of the trust and appoint a successor trustee thereof and order the transfer of the corpus of the trust to the successor trustee, in order to preclude them from asserting such rights and interests; and if not, have such depositors and creditors any right to acquire the adjudication therein to be set aside because of the failure of the Superintendent of Banks, not induced by fraud or collusion, to plead as a defense to said action the invalidity. of a trust?

This question necessarily involves a consideration of the authority and duty of the Superintendent of Banks in the liquidation of a bank, as well as the legal rights and remedies of a depositor or other creditor of such bank in such litigation.

Under the provisions of §710-89 et seq., GC, the general plenary power is conferred and duty imposed on the Superintendent of Banks upon the existence of any of the various conditions mentioned in said Section, to forthwith take possession of the business and property of any bank to which the act incorporating said section is applicable and to administer the same for the purpose of converting the same into money and distributting such money among the persons entitled thereto. Among other powers specifically conferred and other duties specifically imposed upon the Superintendent of Banks under said sections are the following:

**Section 710-91:**

"Immediately upon the posting of notice upon the door or doors of a bank by the superintendent of banks, as provided by §710-90 GC, the possession of all assets and property of such bank of every kind and nature, wheresoever situated, shall be deemed to be transferred from such bank to, and assumed by the superintendent of banks: and such posting shall of itself, and without the execution or delivery of any instrument of conveyance, assignment, transfer or endorsement, vest title to all such property in the superintendent of banks, * * *."

**Section 710-95:**

"The superintendent of banks upon taking possession of the business and property of any bank shall have, exercise and discharge the following powers, authority and duties without notice or approval of court, but subject to the provisions of this chapter, to-wit:

1. * * *
2. * * *
3. To exercise all the rights and powers of such bank under or by virtue of any mortgage, collateral, note, contract, judgment, decree or other instrument.
4. * * *
5. * * *
6. * * *
7. * * *
8. * * *
9. * * *
10. For the purpose of executing and performing any of the powers and duties hereby conferred upon him in his name as superintendent of banks in charge of the liquidation of such bank, to institute. prosecute and defend any and all actions or proceedings within or without this state, and to execute, acknowledge and deliver any and all deeds, leases, assignments, releases,

contracts and other instruments necessary or proper. * * *."

The superintendent of banks by virtue of such statutory provisions, at the times of the commencement pendency and adjudication of the Garson case had the possession and title to all the assets and property of The Guardian Trust Company, including the corpus of the trust and was authorized and empowered to execute all the rights and powers of the trust company under and by virtue of any contract or other instrument including said agreement and declaration of trust, and was further authorized for the purpose of executing, performing any of the powers and duties conferred upon him, including the powers under said agreement and declaration of trust, in his name as superintendent of banks in charge of the liquidation of such trust company, to institute, prosecute and defend any and all actions and proceedings including actions of the character of the Garson case, within or without the state, and constituting plenary power in him in the premises.

Except for the provision of §710-95 GC, giving to persons aggrieved thereby the right by leave of court to bring an independent suit to restrain action by the superintendent of banks upon an order made by the Common Pleas Court in which the proceedings for the liquidation of such bank are pending, upon the application of the Superintendent of Banks, with regard to the exercise of certain additional powers by the superintendent, which has no application to the case at bar, and provisions of other sections giving depositors and other creditors the right to bring suits on their own behalf against the superintendent of banks to secure the allowance of their individual claims rejected by the superintendent of banks, there is no statutory provision either permitting or requiring depositors or other creditors of a bank in charge of the superintendent of banks for liquidation, to institute, prosecute or defend actions or proceedings with reference to the rights, powers, property or assets of the bank or in any way participate except by way of receipt of dividends on their respective claims in the administration of such assets or property, or to litigate the claims of others against said property and assets, said bank or superintendent of banks, on behalf of themselves or others similarly situated, so whatever rights or remedies depositors or other creditors of the bank may have in the premises must arise from the general rules of law or equity.

Under the general rules of law and equity, depositors and other creditors of a bank in charge of the superintendent of banks for liquidation unquestionably have vested contractual rights for the protection and enforcement of which they are entitled to certain remedies. This, however, does not mean that by reason of their vested contractual rights they have such rights and interests in the corpus of the property and assets being administered by the superintendent of banks or in the administration thereof as to require them to be parties to an adjudication such as the adjudication in the Garson case in order to preclude them from asserting such rights and interests.

The remedies to which they are entitled are not those applicable to liquidation proceedings through the process of courts but those applicable to liquidation proceedings by the administrative officer of the state, for the superintendent of banks is an administrative officer of the state whose powers and duties are defined by statute and in the exercise of such powers and in the performance of such duties he acts in his official capacity; and in the institution, prosecution and defense of any and all actions the duties performed by him are discretionary in their nature and involve the exercise of judgment.

The Superintendent of Banks in the defense of said action was by statute clothed with plenary power and authority and as the duties performed by

him in the premises were discretionary in their nature and involved the exercise of judgment, depositors and other creditors of the bank had and have only such remedies for the protection or enforcement of their vested contractual rights therein as under similar circumstances they would have had against any other state administrative officer in the performance of his official duties.

"The rule is firmly established that the courts will not interfere with executive officers or boards in the performance of duties which are discretionary in their nature or involve the exercise of judgment, unless the action is much as to amount to fraud, bad faith or a gross abuse of the judicial discretion conferred upon such officer or board." 32 O. Jur. 930.

It is also firmly established that independent and irrespective of statute, by reason of certain provisions of our state and federal constitutions persons having vested contractual rights which may be detrimentally affected by the action of an administrative officer of the state in the performance of his duties exceeding or abusing his power and discretion may, in a suit in equity in which it is alleged and proved that such officer has exceeded or abused his power and discretion, secure an order from the court directing or restraining such officer in the exercise of such power.

By the provisions of §710-95 GC, that he (the Superintendent of Banks)

"shall not be directed or restrained in the exercise of his power or discretion otherwise than in a suit in equity in which it shall be alleged and proved that he has exceeded or abused such power and discretion,"

the legislature has made it clear that the superintendent in the performance of his duties is subject only to such restraint and direction, and that depositors and other creditors have no other remedy in the premises.

It is also apparent from other provisions of the statutes relating to liquidation of banks that it was the purpose and intent of the legislature to confer plenary power on the superintendent of banks in charge of a bank for liquidation, to administer the assets and property of the bank, and institute, prosecute and defend actions with reference thereto without interference from depositors and other creditors, and to withhold from depositors and other creditors the rights and remedies they would have if the liquidation was carried on by a person other than a public officer under order and process of the courts so that the liquidation might be completed with a minimum of litigation, delay and expense; and to limit the rights and remedies of depositors and other creditors of the bank in such liquidation proceeding to the right by action in equity to direct or restrain the superintendent from exceeding his authority or abusing his discretion in the premises.

For the reasons above mentioned, the depositors and other creditors of the trust company had no such rights or interests in the subject matter of the Garson case as would make it necessary to make them parties defendant thereto in order to preclude them from asserting such rights and interests. Their only right, so far as that action was concerned, was the right before judgment therein to bring a suit in equity against the superintendent of banks for an order directing the superintendent of banks to defend said action on the ground that the trust was invalid.

The plaintiff and other depositors and creditors of the trust company failed to avail themselves of this remedy, and they can not now avail themselves of this remedy as the validity of

the trust has been adjudicated and the superintendent precluded by the adjudication from making such defence; and the superintendent of banks being thus precluded they are likewise precluded as they can act only by court mandate through him. And if the failure by the superintendent, without collusion or fraud, to defend the Garson case on the ground that the trust was invalid constitutes an abuse of discretion, such abuse neither in law nor in equity constitutes a ground for the setting aside of such adjudication.

As neither fraud nor collusion in the securing of the Garson case judgment was charged, it is unnecessary for us to consider and we do not consider what the rights of depositors and creditors of the bank would have been in either of such events.

The petition and trial statement of the plaintiff therefore showed that the plaintiff was precluded from any relief in the case at bar by reason of the adjudication in the Garson case, and for this reason the judgment of the common pleas court will be affirmed at costs of appellant.

KLINGER, J., concurs.
CROW, J., dissents.

CROW, J. (Dissenting):

The judgment attacked by this appeal should, in my opinion, be reversed, and on the undisputed facts established by the pleadings, and the admissions of counsel shown by the bill of exceptions, judgment should be entered for plaintiff to the extent of "directing" by mandatory injunction, defendant superintendent of banks, to prosecute a suit against the holders of the land trust certificates, to set aside the trust, making also party, the trustee of the trust, although the petition does not specifically so pray, and contains much surplusage.

I do agree with the majority in its assertion that "as none of the certifi-

cate holders either individually or as a class are made parties defendant to this action it is only such rights and interests of Keeley as successor thus acquired as are subject to adjudication herein"; and discussion might well stop with that sentence, because he, the successor trustee, could not possibly have any "rights or interests" other than those within the execution of the trust, unless the superintendent of banks was, in virtue of law, the certificate holders and the depositors and other creditors by representation.

If he was not such, the certificate holders other than possibly Garson, were in no manner affected and as to them that case fell to nothingness because of their absence as actual parties.

I would also decide that the record here fails to show that the depositors, the plaintiff and those he represents, ever have had a day in court concerning the validity of the trust and certificate thereof either by the Garson case or otherwise, inasmuch as the very essence of plaintiff's purpose in that case, namely the appointment of a successor trustee, was utterly repellant to even a suggestion that the trust was not valid, and the attitude of defendant superintendent of banks shown by the record cannot possibly be construed otherwise than as an attempt on his part to ratify the trust and the certificates, if the trust was then and there open to successful attack. Elsewise stated, none of the parties to the Garson case in any manner whatsoever evinced a litigious disposition, but on the contrary complete accord existed and all semblance of contest was absent. Thus all of them excluded foundation for the application of the principle of implied or presumed adjudication which is the basis of the decision of the majority.

What might be the situation if the superintendent of banks had litigated the issue of the trust's validity instead of having joined in its exclusion, need not be inquired into, for if under the guise of litigation he could ratify the

trust, there is no reason why he could not have attained the same result outside of the case.

What other recourse, if any, plaintiff and those he represents in the instant case would have were it not for a portion of §710-95, ¶5 GC, is foreign, and we now quote that portion as the majority opinion does.

"In case of doubt or difficulty, the superintendent may ask the instructions of such court, or a judge thereof, as to the manner in which he should exercise his powers and discretion. He shall not be directed or restrained in the exercise of his powers or discretion otherwise than in a suit in equity in which it shall be alleged and proved that he has exceeded or abused such powers and discretion." The present case not relating to instructions askable by the superintendent, does not call for a designation of the court which would have jurisdiction thereof but the court is plainly described wherein the superintendent of banks is to be directed or restrained, that is, enjoined mandatorily or prohibitorily as one "in equity".

When is the latter type of a case to be brought, that is, a case like the one plaintiff is seeking to prosecute? The majority says it must be when there is about to be an exceeding or an abuse of the powers and discretion by the superintendent of banks; but the statute says that "in the suit it shall be alleged and proved that he (superintendent) has exceeded or abused his powers and discretion".

While liquidating a bank the superintendent necessarily encounters many matters involving the exercise of discretion, the pendency of which matters cannot be actually or constructively known to the depositors and other creditors.

Whether, since depositors have contractual rights in the assets of a liquidating bank, by reason of its unlawful diversion of its assets in the form of trusts, the superintendent in charge of the liquidation of such bank, has any power or discretion at all affecting such rights, is, to say the least, extremely doubtful in view of the constitutional inhibition of statutory impairment.

Webster's New International Dictionary defines "abuse" as "improper treatment or use" and "discretion" as "power of free decision".

Tested by that definition the conclusion is inescapable that the superintendent of banks did abuse his discretion for although the Garson case was disposed of prior to the decision in the Ulmer case 129 Oh St 325, the judgment in the latter case as well as in several other subsequent cases in lower courts of Ohio, only reflect the unquestioned law as it had universally and long existed, making void such transactions as the attempted creation of the trust and certificates thereof in issue in the present case.

The paragraph immediately preceding presupposes that the superintendent of banks had some discretion to exercise in the Garson case.

A trust certificate holder may himself bring a suit as was done in the case appearing in the Ohio Law Reporter, February 14, 1938, to set the trust aside and cancel the certificates, or the superintendent of banks may bring a suit for the like purposes as in the case reported in 7 OO 996, wherein an unusually fine and comprehensive opinion by Matthews, J., was filed, admirably covering the principal point in the instant case, namely that though large discretion undefined is vested in the superintendent of banks, when liquidating insolvent banks, and the statutory provision twice quoted furnishes a remedy to aggrieved persons having contractual rights one class of whom would be depositors questioning the validity of unlawful trusts created by the banks.